**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
GILBERT HYATT                  )
                               )
          Plaintiff            )
     v.                        )     Civ. Action No. 03-108 (EGS)
                               )
JON W. DUDAS,                  )
Director of the United States  )
Patent & Trademark Office      )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Gilbert Hyatt is an inventor who holds more than sixty patents on subjects including microcomputers, computer memories, displays, global-positioning systems and data compression.  In 1995, Hyatt filed five patent applications with defendant, the United States Patent and Trademark Office ("PTO"), all generally relating to an improved memory system for a computerized display system.  *See* Pl.'s Mot. for Summ. J. at 3. After a lengthy appeals process, the PTO ultimately rejected plaintiff's patent applications.  Plaintiff then commenced the instant action pursuant to 35 U.S.C. § 145, which provides dissatisfied applicants the right to file a civil action against the Director of the PTO in the United States District Court for the District of Columbia.

Pending before the Court are the parties' cross-motions for

summary judgment.  Because this case is rife with material issues of fact, and because the administrative record has not been adequately developed, the Court will **DENY** the pending motions and **REMAND** the case to the PTO for further proceedings.

I.    **BACKGROUND**

   **A. The Patent Process**

   One seeking to patent an invention must file a written application with the PTO.  An application must include a "specification" consisting of a written description of the invention (which may include drawings) and concluding with one or more "claims" that particularly and distinctly define the subject matter the inventor regards as his or her invention.  *See* 35 U.S.C. § 112. The claims are technically drafted and set the legal boundaries for the patent owner's exclusive rights.  Claims are typically composed of multiple "elements," or physical components, and "limitations," which usually describe the claim's restrictions or interactions between features of the claim's elements.

   A patent specification must contain a

> *written description of the invention*, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112 (emphasis added).  The written description

2

requirement serves to "ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him." *In re Wertheim*, 541 F.2d 257, 262 (CCPA 1976). This requirement is especially relevant when, as in this case, claims are amended or added after the date of the original application. The issue then becomes whether or not the original disclosure adequately describes what is in the new claims. *See, e.g., In re Wilder*, 736 F.2d 1516 (Fed. Cir. 1984). This is a question of fact that must be determined on a case-by-case basis. *See Purdue Pharma L.P. v. Faulding Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000).

After an application is properly filed, a PTO examiner evaluates the application and may allow, reject, or object to the claims. *See* 37 C.F.R. § 1.104. At this initial step, the examiner bears the burden of producing a *prima facie* showing of the factual basis for a rejection of an application. *See In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992). Following an initial rejection, the applicant may amend the claims or file an argument in reply. *See* 35 U.S.C. § 132. Thus, the patent applicant is generally afforded two examiner reviews of the invention proposed for patenting. If the examiner ultimately denies the application in a "Final Office Action," the applicant can appeal to the PTO's Board of Patent Appeals and Interferences ("Board"). 35 U.S.C. § 134; 37 C.F.R. § 1.191. Upon completion

of the briefing process, the Board may affirm or reverse the decision of the examiner or remand the application to the examiner for further consideration.  *See* 37 C.F.R. § 41.50. Finally, if the claims are rejected by the Board, the applicant can directly appeal the decision to the United States Court of Appeals for the Federal Circuit, 35 U.S.C. § 141, or, as plaintiff has done here, file a civil action in the United States District Court for the District of Columbia against the Director of the PTO.  *See* 35 U.S.C. § 145.

**B.  Procedural History**

The procedural history of the instant case tracks the general patent application process outlined above.  Plaintiff filed five patent applications in May and June 1995.[1]  Each application shares the same original 517-page disclosure and contains numerous claims that are "generally related to an

---

[1] The five applications are:
1. U.S. Patent Application Serial No. 08/436,852, "A Memory System Having Televison Graphic Overlays" ("the '852 application");

2. U.S. Patent Application Serial No. 08/463,392, "An Improved Memory System Having a Scanner Input" ("the '392 application");

3. U.S. Patent Application Serial No. 08/464,084, "A Dynamic Memory System Having Adaptive Refreshing" ("the '084 application");

4. U.S. Patent Application Serial No. 08/465,291, "An Improved Output Buffer Memory System" ("the '291 application"); and

5. U.S. Patent Application Serial No. 08/461,269, "An Improved Frequency Domain System" ("the '269 application").

improved memory system for storing information" in a computer
system.  Pl.'s Mot. for Summ. J. at 3.  At various times between
January 1996 and February 1999, Hyatt cancelled all of his
originally-filed claims and substituted a total of 1,120 new
claims.  Thus, if Hyatt can show that the later-added claims are
described in his earlier-filed disclosure--that is, if Hyatt was
"in possession" of these claimed inventions when the applications
were filed--he is entitled to patents that relate back to the
date of the original disclosures in May or early June of 1995.
This is significant, as several significant changes to U.S.
patent law became effective on June 8, 1995 as a result of the
implementing legislation to the Uruguay Round Agreements of the
General Agreement on Tariffs and Trade ("GATT").  *See* Uruguay
Round Agreements Act, Pub. L. No. 103-465 (1994). Specifically,
patents issuing from applications filed before this date receive
a term of 17 years from the date of *issuance*, while applications
filed on or after that date receive a term of 20 years from the
date of *filing*.  *See* Final Rule, *Changes to Implement 20-Year
Patent Term and Provisional Applications*, 60 Fed. Reg. 20195
(Apr. 25, 1995); 35 U.S.C. § 154(a)(2).[2]

    At various times between 1997 and 1999, the PTO rejected the

---

[2] **SEALED FOOTNOTE.** [This footnote contains confidential
information under the patent statute, 35 U.S.C. §122 and has
previously been placed under seal in this instant case.]

claims in each of the five applications, primarily for lack of sufficient written description under Section 112.[3]  The examiner concluded that Hyatt did not demonstrate "possession" of the claimed inventions at the time of the original filing date because he failed to point to a description in his specification that discloses how the individual components listed in the original specification could be linked to form the particular claimed devices in his amended claims.  *See, e.g.,* '852 Application, *Office Action*, 108-F-1,147 ("it is not enough that applicant show where each claimed element resides in the <u>earliest</u> filed application but <u>must also</u> provide support for the <u>linkage</u> of the claimed elements creating the embodiment")(emphasis in original).[4]

---

[3] Each involved application also included other claim rejections that were reversed by the Board and therefore form no part of this case.  In addition to the rejections for lack of written description, there are a handful of claims in the '084 application that also stand rejected as anticipated by or obvious in view of the prior art under Sections 102 and 103, and the pending claims of the '269 application also stand rejected for lack of "enablement" under Section 112.  *See* 108-F-1,140 to 1,155 ('852 Application); 108D-F-887 to 904 ('392 Application); 108C-F-1,010 to 1,025 ('084 Application); 108B-F-1,075 to 1,100 ('291 Application); 108E-F-730 to 750 ('269 Application).

[4] For each application, the examiner evaluated one claim in detail and pointed out the deficiencies in that one claim as representative of the others.  *See, e.g.,* '852 Application, *Examiner's Action*, 108-F-1,540 ("Claim 163 was chosen for it is a comprehensive claim, that is, it includes most-if not all-of the claimed elements found throughout the independent claims.").  Similarly, claim 106 is treated as a representative claim in application '084; claims 105 and 86 are the representative claims for application '269; claim 58 is the representative claim for

Hyatt objected to the PTO's approach, arguing primarily that the examiner failed to establish a *prima facie* case of unpatentability.  However, the Board of Patent Appeals affirmed the examiner's written description rejections for each application.[5]  The Board subsequently granted plaintiffs' requests for rehearing in '852, '084, and '269, but no modifications were made to the decisions.  Plaintiff then filed, pursuant to 35 U.S.C. § 145, four separate civil actions against the PTO, which were consolidated into the instant case.[6]

## II.  STANDARD OF REVIEW

This case is before the Court on the parties' cross motions for summary judgment.  Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the

---

application '392; and claim 90 is the representative claim for application '291.

[5] *See* Application '852 Decision on Appeal, 108-F-2,704 (sustaining examiner's Section 112 rejections, but reversing the prior art rejections); Application '392 Decision on Appeal, 108D-F-2,128 (sustaining examiner's Section 112 rejection but reversing the obviousness rejection); Application '084 Decision on Appeal, 108C-F-2,382 (affirming examiner Section 112 rejection, and reversing examiner rejection on prior art grounds with the exception of claims 191, 212, 282, 308, 260, and 304); Application '291 Decision on Appeal, 108B-F-2,558 (affirming examiner Section 112 rejection but reversing rejection for obviousness); Application '269 Decision on Appeal, 108E-F-98 (affirming examiner's Section 112 rejection).

[6] Hyatt has filed and continues to file numerous additional cases in this Court relating to additional patent applications, including 04-1138(HHK); 04-1139(HHK); 04-1222(EGS); 04-1496(EGS); 04-1802(HHK); 05-309(EGS); 05-310(HHK); 05-834(EGS).  These cases are currently proceeding on an independent track.

moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed.  *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975).

Finally, the "PTO is an agency subject to the Administrative Procedure Act" ("APA"), and therefore "a reviewing court must apply the APA's court/agency review standards."  *Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003).  Accordingly, the Court will set aside legal actions of the Board that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and set aside factual findings that are "unsupported by substantial evidence."  5 U.S.C. § 706 (2000); *Mazzari*, 323 F.3d at 1005; *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  If the parties present additional evidence to the Court, which they may on a Section 145 review, the court must make "de novo factual findings if the evidence is conflicting." *Mazzari*, 323 F.3d at 1004*; see also Gould v. Quigg,* 822 F.2d

1074, 1077 (Fed. Cir. 1987).[7]

## III.  DISCUSSION

Both parties raise technical legal challenges to the other's compliance with the rules of the patent review process outlined above.  For example, the parties dispute whether the PTO met its obligation to establish a *prima facie* case of unpatentability before denying Hyatt's claims.  They also dispute whether Hyatt preserved his rights to argue all 1,120 claims before this Court or whether he acquiesced in litigating only five "representative" claims before the Board of Patent Appeals.  Because these issues are essentially procedural in nature, the Court need not reach the merits of Hyatt's applications or the ultimate patentability of his inventions.  For the same reasons, the Court need not review the PTO's "factual" determinations nor make de novo factual findings of its own at this stage of the litigation.

Although summary judgment appears to be premature at this point, the Court must resolve several threshold procedural issues and determine the proper scope and direction of this litigation.  Specifically, the Court must decide three issues: 1) the scope and number of claims properly before the Court; 2) whether or not the PTO met its *prima facie* case; and 3)

---

[7] Although parties may present new evidence in Section 145 proceedings, they are prohibited from introducing new *issues*, "at least in the absence of some reason of justice put forward for failure to present the issue to the Patent Office."  *See DeSeversky v. Brenner*, 424 F.2d 857, 858 (D.C. Cir. 1970).

the remedy for any procedural failures, *i.e.* whether to proceed to a trial on the merits of Hyatt's patent applications or, instead, whether to remand to the PTO for further consideration of Hyatt's applications in the first instance.

**A. Scope of Proceedings: How Many Claims are Before the Court?**

Defendant argues that only five claims--rather than 1,120--are correctly before the Court.  The crux of defendant's argument is that Hyatt "acquiesced in the choice of the five representative claims" before the PTO Board, and that he cannot resurrect his arguments as to the remaining 1,000+ claims.  *See* Def.'s Mot. for Summ. J. at 18.  Plaintiff argues that not only did he adequately preserve his right to argue and introduce evidence on *all* claims in the instant case, but the PTO's failure to examine each claim individually could actually be dispositive of the case, as it is evidence that the examiner did not meet its initial burden of establishing a *prima facie* case of unpatentability.

According to the Patent Act, each claim "must be considered as defining a separate invention" and "shall be presumed valid independently of the validity of other claims."  *Jones v. Hardy,* 727 F.2d 1524, 1527-28 (Fed. Cir. 1984)(citing 35 U.S.C. § 282).  However, the selection and evaluation of one claim as representative in a multi-claim application is a common practice in patent litigation.  For example, the PTO regulations covering

appeals to the Board of Patent Appeals provide that:

> [f]or each ground of rejection applying to two or more claims, the claims may be argued separately or as a group.  When multiple claims subject to the same ground of rejection are argued as a group by appellant, the Board may select a single claim from the group of claims that are argued together to decide the appeal with respect to the group of claims as to the ground of rejection on the basis of the selected claim alone. Notwithstanding any other provision of this paragraph, the failure of appellant to separately argue claims which appellant has grouped together shall constitute a waiver of any argument that the Board must consider the patentability of any grouped claim separately.

37 C.F.R. § 41.37(c)(1)(vii).  The former version of this regulation required an appellant to take two affirmative steps in order to assure separate review by the Board of individual claims within each group of claims subject to a common ground of rejection: "(A) state that the claims do not stand or fall together and (B) present arguments why the claims subject to the same rejection are separately patentable."  *See In re McDaniel*, 293 F.3d 1379, 1383 (Fed. Cir. 2002) (citing Manual of Patent Examination Procedure ("MPEP") § 1206, and former 37 C.F.R. § 1.192(c)(7)(2001)).[8]  The court interpreting this rule found

---

[8] On August 12, 2004, the PTO published revised Rules of Practice adding Part 41 to Title 37 of the C.F.R. and replacing the former regulations covering ex parte appeals (37 C.F.R. §§ 1.192-196), interferences (37 C.F.R. §§ 1.601-690), and inter partes reexamination appeals (37 C.F.R. §§ 1.961-977).  *See* Final Rule, *Rules of Practice Before the Board of Patent Appeals and Interferences*, 69 Fed. Reg. 49960 (Aug. 12, 2004).

The former 37 C.F.R. § 1.192(c)(7) read in full:

> Grouping of claims. For each ground of rejection which

that it "operates to relieve the Board from having to review--and
an applicant from having to argue--the myriad of distinctions
that might exist among claims, where those distinctions are, in
and of themselves, of no patentable consequence to a contested
rejection." *McDaniel*, 293 F.3d at 1383.  Defendant argues that
Hyatt's arguments to the Board fail the *McDaniel* test because
Hyatt failed to sufficiently explain why his claims were
separately patentable.

    Regardless of whether or not the "*McDaniel* test" still
applies in light of the recent amendments to the PTO's
regulations, the government's position that Hyatt somehow
"acquiesced" in the litigation of only five of his 1,000+ claims
is not persuasive.  The record reflects plaintiff's repeated
statements that his claims "do not stand or fall together." *See,
e.g.,* '852 Application, *Appeal Brief*, 108-F-1,822 (arguing that
"[t]he claims do not stand or fall together" because "the claims
are separately patentable and because each of the claims is
separately argued").  The examiner apparently conceded this point

―――――――――――――――――――――

        appellant contests and which applies to a group of two or
    more claims, the Board shall select a single claim from
    the group and shall decide the appeal as to the ground of
    rejection on the basis of that claim alone unless a
    statement is included that the claims of the group do not
    stand or fall together and, in the argument under
    paragraph (c)(8) of this section, appellant explains why
    the claims of the group are believed to be separately
    patentable.  Merely pointing out differences in what the
    claims cover is not an argument as to why the claims are
    separately patentable.

when it acknowledged that "Appellant's brief includes a statement that the claims do not stand or fall together and provides reasons as set forth in 37 C.F.R. § 1.192 (c)(7) and (c)(8)." *See* '852 Application, *Examiner's Answer*, 108-F-2,303.  Hyatt further restated his objections to the grouping of his claims in his Reply to the Board:

> The Appellant established that the claims do not stand or fall together and the Examiner concurred therewith ... Nevertheless, the Examiner then inconsistently provides a few specific examples in support of the rejections and then rejects many claims altogether thereover. This violates the undisputed fact that the claims do not all stand or fall together.

'852 Application, *Reply Brief*, 108-F-2,341.

Despite the government's argument that Hyatt "forfeited his right" to argue his claims separately following his "strategic choice" to focus on the government's *prima facie* case, it would be unfair to foreclose plaintiff's ability to have all of his claims adjudicated on the merits before resolving the legal dispute over the *prima facie* case.  Indeed, the essence of plaintiff's argument is that it was the government's obligation, in the first instance, to separately evaluate each claim before the burden shifts back to the applicant.  Accordingly, the Court must first determine whether or not the burden of production ever shifted to the applicant before deciding whether plaintiff effectively abandoned the vast majority of his claims.

**B.    The PTO's Prima Facie Case**

13

While the ultimate burden of persuasion on the issue of patentability rests with the PTO, the burdens of *production* shift between the examiner and the applicant throughout the review process. *See Oetiker*, 977 F.2d at 1449 (Plager, J., concurring). The *prima facie* case is a procedural tool used at the initial stage of the examination to allocate these burdens of going forward as between the examiner and applicant. The examiner meets its *prima facie* burden by "stat[ing] clearly and specifically any objections ... to patentability," in order to "give the applicant fair opportunity to meet those objections with evidence and argument." *Id.* (explaining that this concept "serves to level the playing field and reduces the likelihood of administrative arbitrariness"). Once a *prima facie* case has been established, the burden of coming forward with rebuttal evidence shifts to the applicant. If rebuttal evidence of adequate weight is produced, the "legal inference" of the *prima facie* case is dissipated, and patentability is determined by a preponderance of the evidence, based on the totality of the record. *See In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984); *Oetiker*, 977 F.2d at 1445.

In this case, the parties generally dispute whether the PTO's objections at the initial examination stage were sufficient to shift the burden of production to plaintiff. The examiner's initial office action rejecting the '852 application illustrates

the PTO's reasoning with respect to the written description

requirement:

> [The pending claims] are rejected under 35 U.S.C. 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.
>
> This rejection is given because the claims now present embodiments or combinations of claimed elements not disclosed in the specification at the time of filing ... it is not enough that applicant show where each claimed element resides in the earliest filed application but must also provide support for the linkage of the claimed elements creating the embodiment.
>
> The elements of claim 163 constituting an embodiment are not specifically disclosed. While each element individually may be discussed neither the specification nor drawings clearly support the claimed embodiment as a whole.  Applicant must derive support for the claimed embodiments from the earliest filed application applicant wishes to claim priority.

108-F-1,146 to -147 (emphasis in original); *see also* 108B-F-

1,084; 108C-F-1,015; 108D-F-893.[9]  The Board's decision following

---

[9] An overview of the remaining applications is set forth below:

The '291 Application. In a non-final Office Action, the PTO rejected all of the pending claims for lack of written description support. *See* 108B-F-1,108 to -085.  This rejection mirrors that found in the '852 application.  In a final action and a supplemental final action, the PTO reasserted the same rejection.  *See* 108B-F-1,465 to -470; 108B-F-1,685 to -690.

The '084 Application. In a non-final Office Action, the PTO rejected all of the pending claims for lack of written description support.  *See* 108C-F-1,012 to -016.  This rejection mirrors that found in the '852 application.  In a final action, the PTO reasserted the same rejection.  *See* 108C-F-1,394 to -400.

The '392 Application. In a non-final Office Action, the PTO

appeal is also instructive.  Using claim 163 of the '852

application as an example, the Board concluded that:

> After comparing the limitations of claim 163, for
> example, to the disclosure, it is apparent that an
> "alternative" or self-contained embodiment describing
> <u>each and every limitation of</u> the claim is not set forth
> in the disclosure.  On this basis alone, we find that
> the examiner had a reasonable basis for questioning the
> written description for each of the rejected claims on
> appeal, and the burden of proof thereafter shifted to
> appellant.
> ....
> In the absence of a showing by appellant that rebuts
> the examiner's reasoning, the written description
> rejection of all the claims on appeal is sustained.

108-F-2,700 to -701.

Plaintiff argues that the PTO's general dismissal of his

claims without a detailed, claim-by-claim evaluation, and

specifically the Board's requirement that the applicant provide a

"self-contained embodiment" in the disclosure describing each

limitation of the claims, failed to satisfy the government's

obligation to establish a *prima facie* case and impermissibly

shifted the burden of proof from the PTO to the applicant:

> Indeed, if the PTO were able to disregard with impunity
> the requirements of the *prima facie* case - as it has done

---

rejected all of the pending claims for lack of written
description support.  *See* 108D-F-889 to -894.  This rejection
mirrors that found in the '852 application.  In a final action,
the PTO reasserted the same rejection.  *See* 108D-F-1,309 to -014.

<u>The '269 Application</u>. In a non-final Office Action, the PTO
rejected all of the pending claims for lack of written
description support.  *See* 108E-F-1,377 to -378 and 1,393-1,456.
In a final action, the PTO asserted essentially the same
rejection.  *See* 108E-F-1,994 and 2,002 to -082.

> here - and then demand that the specificity that was
> lacking in its *prima facie* case be foisted upon the
> applicant in the form of a requirement that the applicant
> argue each claim separately and in detail in order to
> preserve his appeal rights as to each claim, the PTO
> could force patent applicants to do the agency's work
> and, in the process, effectively shift the burden from
> PTO to the applicant.

Pl's. Opp'n to Def's. Mot. for Summ. J. at 34.  Defendant

responds that the examiner's initial rejections were justified

because the "laundry list of computer system components"

discussed in Hyatt's specification "describes only the <u>potential</u>

of implementing a computer system in various applications," but

does not describe a "precise list of interconnected components

that work together in a very specific way."  *See* Def's Mot. For

Summ. J. at 31.  Given the complexity of Hyatt's applications,

defendant argues that

> there is not much more the Examiners could have done but
> identify the difficulty in finding descriptions of the
> claimed inventions, and analyze Hyatt's responses.  Hyatt
> was put on notice of the reasons for the written
> description rejection, and given an immediate opportunity
> to explain how the claimed inventions were, in fact,
> described.  This is the epitome of a *prima facie* case.
> However, rather than explaining where the inventions as
> claimed are described, Hyatt chose to argue against the
> sufficiency of the *prima facie* case.

Def's. Rep. at 12.

It is a close call, but given the severe consequences to the

applicant should the government's arguments prevail, the Court

will afford plaintiff the benefit of the doubt.  Although the

case law has used various expressions to set forth the standards

for compliance with § 112, it is clear that the written
description requirement does not require a patent applicant to
provide a verbatim description of all his claims in the
disclosure.  *See Union Oil Co. Of Cal. v. Atl. Richfield Co.*
("*UNOCAL*")*,* 208 F.3d 989, 997-1001 (Fed. Cir. 2000).  Rather, "if
a person of ordinary skill in the art would have understood the
inventor to have been in possession of the claimed invention at
the time of filing, even if every nuance of the claims is not
explicitly described in the specification, then the adequate
written description requirement is met."  *In re Alton*, 76 F.3d
1168, 1175 (Fed. Cir. 1996); *see also Vas-Cath, Inc. v. Mahurkar*,
935 F.2d 1555, 1563 (Fed. Cir. 1991)("The test for sufficiency of
support in a patent application is whether the disclosure of the
application relied upon 'reasonably conveys to the artisan that
the inventor had possession at that time of the later claimed
subject matter.'")(citing *Ralston Purina Co. v. Far-Mar-Co, Inc.,*
772 F.2d 1570, 1575 (Fed. Cir. 1985)).  One shows that one is "in
possession" of an invention by describing the invention with all
its claimed limitations through "such descriptive means as words,
structures, figures, diagrams, formulas, etc., that fully set
forth the claimed invention."  *See Lockwood v. Am. Airlines,
Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).  "Although the exact
terms need not be used *in haec verba*, the specification must
contain an equivalent description of the claimed subject matter."

18

*Id.*[10]

In this case, the PTO apparently required Hyatt to include a "self-contained embodiment describing each and every limitation of the claim" in his disclosures. *See* 108-F-2,700. It is difficult on this record to determine what the PTO meant by a "self-contained embodiment," or whether this requirement is consistent with the case law, because the phrase is not defined nor does it appear in any of the cases. Moreover, in rejecting plaintiff's applications, the PTO at times used rather vague and unspecific language. *See, e.g.,* '852 Application, *Office Action*, 108-F-1,144 (describing the deficiencies in Claim 163 and then noting that "[n]umerous other claimed embodiments similarly find no clear support in the present disclosure").[11] Accordingly, it appears that the PTO has fallen somewhat short of its obligation to "state clearly and specifically" its objections to patentability. *See Oetiker*, 977 F.2d at 1449. Because of the risk of prejudice to plaintiff that would result from affirming

---

[10] Although plaintiff attempts to draw some distinctions between the cases' various expressions for compliance with § 112, *see, e.g.,* Pl's. Reply at 9-12, the Federal Circuit has rejected this argument, stating that "[i]n all cases, the purpose of the description requirement is 'to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.'" *See Hyatt v. Boone*, 146 F.3d 1348, 1354 (Fed. Cir. 1998)(rejecting Gilbert Hyatt's argument that the various cases set divergent standards for compliance with § 112).

[11] *See also* 108B-F-1,081; 108C-F-1,013; 108D-F-1,722.

the PTO's denial of his patent applications, and because the record could benefit from allowing the applicant a "fair opportunity to meet those objections with evidence and argument," the Court finds that the Board erred in determining that the examiners' rejections established a *prima facie* case.

### C.    What is the Remedy?

Seizing on one sentence from *Oetiker*, plaintiff argues that the examiner's failure to establish a *prima facie* case, without more, entitles Hyatt to automatic issuance of his patents. *See* Pl's. Reply at 4 (citing *Oetiker* for the proposition that "if the PTO fails to make its *prima facie* case, then '*without more* the applicant is entitled to grant of the patent'").  However, plaintiff reads too much into *Oetiker* and appears to misunderstand the nature of the *prima facie* case.  The *prima facie* case is a "purely procedural device" that allocates the burdens of production as between the examiner and the applicant. *See Piasecki*, 745 F.2d at 1471-72.  The ultimate determination of patentability, however, must be made on the totality of the record.  In other words, the *prima facie* case is "a legal conclusion, not a fact."  *See id.* at 1472; *In re Rinehart*, 531 F.2d 1048, 1052 (C.C.P.A. 1976).  As Judge Plager observed in his concurring opinion in *Oetiker*:

> the ultimate decision that must be made by the PTO in the
> examination process, and by this court on appeal, is not
> whether a prima facie case for rejection was made; the

> only question is whether, on the whole record, the
> applicant has met the statutory requirements for
> obtaining a patent. When a final rejection is described
> in terms of whether a prima facie case was made, that
> intermediate issue diverts attention from what should be
> the question to be decided.

*Oetiker*, 977 F.2d at 1449.

The Court agrees that the "intermediate issue" of the *prima*
*facie* case has effectively diverted the attention of the parties
and the Court from the actual underlying merits of plaintiff's
patent applications. On this record, the Court cannot determine
whether plaintiff is truly entitled to the issuance of a patent.
In any event, this Court does not have the authority to direct
the issuance of a patent, even where it concludes that the Board
has erred as a matter of law. *See Gould v. Quigg*, 822 F.2d 1074,
1079 (Fed. Cir. 1987)(noting that 35 U.S.C. § 145 only allows the
district court to *authorize*, not *direct*, the Board to issue a
patent on compliance with the requirements of law). As the
courts have frequently pointed out:

> we pass only on rejections actually made and do not
> decree the issuance of patents. After our decision in an
> ex parte patent case, the Patent Office can always reopen
> prosecution and cite new references, in which limited
> sense our mandates amount to remands.

*In re Gould*, 673 F.2d 1385, 1386 (CCPA 1982)(citing *In re Fisher*,
448 F.2d 1406, 1407 (CCPA 1971)). Accordingly, the proper remedy
in this case is not the automatic issuance of a patent, as Hyatt
claims, but rather the Court must decide whether to remand the
case to the PTO for further proceedings or proceed independently

21

to a determination on the merits.

This decision is influenced by the unique nature of cases under 35 U.S.C. § 145.  Although it is often said that plaintiffs are entitled to *de novo* trials under § 145, these proceedings "are not true or genuine trials *de novo*," but rather have a "hybrid nature."  *MacKay v. Quigg*, 641 F. Supp. 567, 569 (D.D.C. 1986).  Because "the board's decision is the jurisdictional base for the suit, and the record before the office is the evidentiary nucleus," an action under § 145 "is in essence a suit *to set aside* the final decision of the board."  *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037 (Fed. Cir. 1985)*; see also Gould*, 822 F.2d at 1076*.*  Accordingly, it is important for district courts in § 145 proceedings to have a well developed administrative record.  *See Mazzari*, 323 F.3d at 1005 (noting that "[a] decision by the PTO is reviewed on the administrative record of an agency hearing provided for by statute"); *Fregeau*, 776 F.2d at 1038 ("Clearly, the applicant does not start over to prosecute his application before the district court unfettered by what happened in the PTO."); *see also Dickinson v. Zurko*, 527 U.S. 150, 152 (1999)(holding, in a § 141 case, that the PTO is an agency subject to the familiar constraints of the Administrative Procedure Act).[12]

---

[12] This combination of agency review and trial-type proceedings under Section 145 raises an interesting question of the standards of review to be applied by a district court.  In

In this case, the parties' abstract legal dispute over the
PTO's *prima facie* case has short-circuited the typical review
process and left this Court without an adequate record.  As a
result, neither Hyatt nor the PTO have done the necessary work on
the merits to enable this Court to effectively do its job under
§ 145.  Accordingly, an order setting aside the Board's decision
and remanding the case to the PTO for further proceedings is in
the interests of sound judicial administration.  Courts have
repeatedly found remands to the PTO appropriate in § 145 and
other patent adjudication cases.  *See Alton*, 76 F.3d at 1175-76
(remanding to the PTO for further proceedings after finding that
the examiner and Board erred as a matter of law in concluding
that the applicant failed to rebut the *prima facie* case); *In re
Beaver*, 893 F.2d 329, 330 (Fed. Cir. 1989)(vacating the Board's
decision for improperly grouping claims that were separately
argued before the Board and remanding for decision on the merits
of all the claims); *In re Gould*, 673 F.2d at 1386-87 (finding
that "judicial economy dictates granting a remand" where the PTO
informed the court that "several new rejections on grounds not
before us are waiting in the wings").  Furthermore, the D.C.

---

*Mazzari*, 323 F.3d at 1005, the Federal Circuit held that where
the parties choose not to supplement the record with new
evidence, the Board's factual findings are reviewed under a
"substantial evidence" standard.  *See id.*  If, however, the
parties choose to present additional evidence, the district court
would make *de novo* factual findings if the evidence is
conflicting.  *Id.*

Circuit has held that courts should "abstain from consideration of an issue that has not been presented to the Patent Office." *See DeSeversky*, 424 F.2d at 859 (explaining the doctrine of exhaustion of administrative remedies in the § 145 context). Because the parties have focused exclusively on the adequacy of the prima facie case, they have failed to effectively address the underlying *merits* of Hyatt's patent applications.  As in *DeSeversky*, "the application of Patent Office expertise in the first instance may either obviate the need for judicial consideration, or illuminate the issues and facilitate the court's disposition." *Id.* at 859.  A remand will also serve the "general policy of encouraging full disclosure to administrative tribunals," *see id.* at 859 n.5, by providing applicants with incentives to begin the interactive process of patent adjudication at the outset, rather than engaging in protracted legal battles over the sufficiency of the *prima facie* case.


### D.   Moving Forward

The PTO understandably regards Mr. Hyatt and his numerous and complex patent applications as a significant burden and drain on its resources.  *See* Def's. Reply at 3-4 (detailing the unusual number and complexity of Hyatt's patent applications pending before the PTO).  Nevertheless, plaintiff is entitled under the law to a fair hearing and determination of his rights to a patent

under the laws of the United States. *See Beaver*, 893 F.2d at 330
(noting that "[t]he public responsibility of the Patent and
Trademark Office requires attentive performance of all aspects of
the patent examination function"). However, plaintiff is
cautioned that the PTO's obligation to establish a *prima facie*
case is not necessarily a high bar. *See Alton*, 76 F.3d at 1175
(noting that "the burden placed on the examiner varies, depending
upon what the applicant claims"). The PTO's Manual of Patent
Examining Procedure ("MPEP")[13] points out that:

> A simple statement such as "*Applicant has not pointed out
> where the new (or amended) claim is supported, nor does
> there appear to be a written description of the claim
> limitation '___' in the application as filed.*" may be
> sufficient where the claim is a new or amended claim, the
> support for the limitation is not apparent, and applicant
> has not pointed out where the limitation is supported.

MPEP 2163.04(I)(B). Although the examiner has the initial burden
to present evidence or reasons why the written description
requirement is not satisfied, the patent applicant is not
entitled to sit back and let an especially complex or confusing
disclosure inure to his own benefit. *See Purdue*, 230 F.3d at
1326 ("[O]ne cannot disclose a forest in the original
application, and then later pick a tree out of the forest and say

___

[13] The MPEP is used by the PTO as a guide in the examination
process: "While the MPEP does not have the force of law, it is
entitled to judicial notice as an official interpretation of
statutes and regulations as long as it is not in conflict
therewith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10
(Fed. Cir. 1995).

here is my invention.")(citing *In re Ruschig*, 379 F.2d 990, 994-95 (C.C.P.A. 1967)).  The applicant is in the best position to explain his invention, especially where the claims are unusually lengthy or complex.  Therefore, it is not unreasonable to expect the applicant to assist the PTO (whose resources are, after all, finite) by specifically pointing out support in the original disclosure for newly added or amended claims.  *See* MPEP § 2163(II)(A)(3)(b) ("when filing an amendment an applicant should show support in the original disclosure for new or amended claims").

Plaintiff has made some efforts to streamline the presentation of his claims in the proceedings below.  For example, following the Board's rejection of the '852 Application, plaintiff separated his claims into six categories and presented claim-by-claim arguments for the separate patentability of each appealed claim.  *See* '852 Application Reply Brief, Exhibit 5, 108-F-2,444 to 616.  Although these efforts were ultimately rejected as untimely, s*ee* '852 Application, *Decision on Request for Rehearing*, 108-F-3,418 (noting that "a request for rehearing is not the proper vehicle to present such a showing for the first time"), they represent the types of measures that are not only possible on remand, but necessary to transform this patent adjudication into the *interactive* process it is intended to be. Accordingly, while the Court agrees that the PTO's *prima facie*

case was not a model of clarity the first time around, the time has come to move past the current legal limbo and resolve the ultimate patentability of Hyatt's claims.  On remand, the PTO should clearly articulate the perceived deficiencies in plaintiff's claims, and plaintiff should take every opportunity to provide evidence and argument to rebut those objections. Should this dispute eventually require further judicial intervention, at least the reviewing court will have the benefit of a fully developed record.

## IV.  CONCLUSION

For the reasons described above, defendant's Motion for Summary Judgment will be **DENIED**; plaintiff's Motion for Summary Judgment will be **GRANTED IN PART** with respect to the adequacy of the PTO's *prima facie* case and **DENIED IN PART** with respect to the relief requested; and this case will be **REMANDED** to the PTO for further proceedings consistent with this Memorandum Opinion.

A separate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            October 13, 2005**