## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
GILBERT P. HYATT,               )
                                )
          Plaintiff,            )
                                )
     v.                         )  Civil Action No. 03-108 (EGS)
                                )
MICHELLE K. LEE, Under Secretary)         SEALED
Of Commerce for Intellectual    )
Property and Director of the    )
United States Patent and        )
Trademark Office,               )
                                )
          Defendant.[1]          )
_____ )
```

### MEMORANDUM OPINION

Currently pending before the court is defendant the United States Patent and Trademark Office's ("PTO") motion to dismiss for failure to prosecute and prosecution laches, plaintiff Gilbert Hyatt's motion for leave to file a notice of additional authority and a supplemental memorandum in opposition to the motion to dismiss, and Mr. Hyatt's motion to remand the patent applications at issue in this case to the PTO. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, Mr. Hyatt's motion for leave to file is **GRANTED**, and the PTO's motion to dismiss is

---

[1] Michelle K. Lee has been substituted as the named defendant pursuant to Federal Rule of Civil Procedure 25(d).

1

**GRANTED**. Because dismissal is warranted, Mr. Hyatt's motion to remand is **DENIED AS MOOT**.

## I.  Background

Legislation enacted to implement the Uruguay Round Agreements of the General Agreement on Tariffs and Trade ("GATT") made several significant changes to United States patent law effective June 8, 1995. *Hyatt v. Dudas* ("*Hyatt I*"), 393 F. Supp. 2d 1, 5 (D.D.C. 2005) (citing Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994)). One of those changes is that patents issuing from patent applications filed with the PTO before June 8, 1995 can receive a term of 17 years from the date of *issuance*, whereas patents issuing from applications filed on or after June 8, 1995 receive a term of 20 years from the date of *filing*. *Id.* (citing Final Rule, *Changes to Implement 20-Year Patent Term and Provisional Applications*, 60 Fed. Reg. 20195 (Apr. 25, 1995); 35 U.S.C. § 154(a)(2)); *see also* 35 U.S.C. § 154(c)(1). Just prior to June 8, 1995, Mr. Hyatt filed 400 patent applications. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 8. Five of those applications are at issue in this case.[2] *See id.* at 3; Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 8. Each of

---

[2] The applications at issue in this case are Patent Application Nos. 08/436,852, 08/463,392, 08/464,084, 08/465,291, and 08/461,269.

these applications is a continuation of an application filed on December 2, 1988 and a continuation-in-part of applications filed earlier still. Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 8. In addition, between filing these applications in 1995 and mid-1998, Mr. Hyatt amended the claims they contained numerous times. *Id.* at 16.

The patent examiners tasked with reviewing the applications rejected them, finding that, among other defects plaguing certain of the applications, all of them lacked written description support under 35 U.S.C. § 112. Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 4. Mr. Hyatt contested the examiners' conclusions, arguing primarily that the examiners had failed to establish a *prima facie* case of unpatentability. *Hyatt I*, 393 F. Supp. 2d at 6. But the Patent Trial and Appeal Board affirmed the examiners' written description rejections for each application.[3] *Id.* Mr. Hyatt then filed, pursuant to 35 U.S.C. § 145, four civil actions—which have been consolidated into this case—challenging the Board's decisions.[4] *Id.*

---

[3] At the time that it affirmed the written description rejections, the Patent Trial and Appeal Board was known as the Board of Patent Appeals and Interferences. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 3(j)(1), 125 Stat. 284, 290 (2011).

[4] This consolidated case is in addition to four other Section 145 actions—Civil Action Nos. 04-1222, 04-1496, 05-309, and 05-834—that Mr. Hyatt has before this Court.

Upon consideration of the parties' cross-motions for summary judgment, this Court concluded that the Board erred in determining that the examiners' rejections established a *prima facie* case and remanded the case back to the PTO. *Id.* at 9-13. The PTO, however, appealed to the United States Court of Appeals for the Federal Circuit, which reversed and remanded, finding that the examiners had set forth a sufficient *prima facie* basis for rejecting the applications due to a lack of written description support. *Hyatt v. Dudas* ("*Hyatt II*"), 492 F.3d 1365, 1371-72 (Fed. Cir. 2007).

For the next eight years this case languished on this Court's docket without any action until the PTO filed its motion to dismiss for failure to prosecute and prosecution laches on February 2, 2016. *See* Def.'s Mot. to Dismiss, ECF No. 110-1. Mr. Hyatt has opposed that motion to dismiss and, on March 1, 2016, filed a motion to remand the applications at issue here to the PTO. *See* Pl.'s Mot. to Remand, ECF No. 116. The PTO has, in turn, opposed that motion to remand. *See* Def.'s Opp. to Pl.'s Mot. to Remand, ECF No. 122. Then, on July 18, 2016, Mr. Hyatt filed a motion for leave to file a notice of additional authority and a supplemental memorandum in opposition to the motion to dismiss. *See* Pl.'s Mot. for Leave to File, ECF No. 129. That motion seeks to bring to the Court's attention the decision of another court in this District granting the PTO's

4

motion to dismiss in another of Mr. Hyatt's Section 145 cases,
*Hyatt v. Lee*, Civil Action No. 03-901 (D.D.C. June 6, 2016)
(hereinafter "Civil Action No. 03-901"), based on Mr. Hyatt's
failure to take any action in that case for an approximately
three-year period. *See* Pl.'s Notice of Additional Authority and
Suppl. Mem. in Opp. to Mot. to Dismiss ("Pl.'s Suppl. Mem."),
ECF No. 129-1 at 1-2. That motion also seeks to have this Court
consider the argument that if Mr. Hyatt's dilatory conduct in
this case warrants sanction, the sanction should be terminal
disclaimer——a requirement that Mr. Hyatt disclaim the portion of
the patent term that corresponds to any unreasonable delay——as a
less severe alternative to the sanction of dismissal. *See id.* at
2-3. The court in Civil Action No. 03-901 had concluded that it
was unaware of any less severe alternative sanction to dismissal
that would be appropriate as a sanction for Mr. Hyatt's failure
to prosecute. Civil Action No. 03-901 at 10.

## II. Legal Standards

The PTO moves to dismiss here on the same two grounds on
which it based its motion to dismiss in Civil Action No. 03-901,
*see id.* at 1: failure to prosecute pursuant to Federal Rule of
Civil Procedure 41(b), *see* Def.'s Mem. in Supp. of Mot. to
Dismiss, ECF No. 110-1 at 13-17, and prosecution laches. *See id.*
at 18-33. The relevant legal standards for these two doctrines
are set forth as follows.

5

A.   **Federal Rule of Civil Procedure 41(b)**

Federal Rule of Civil Procedure 41(b) permits a court to
dismiss an action for failure "to prosecute or to comply with
[the Federal Rules] or a court order." Fed. R. Civ. P. 41(b).
The three basic justifications for dismissal under this Rule
are: "(1) prejudice to the other party; (2) failure of
alternative sanctions to mitigate the severe burden that the
misconduct has placed on the judicial system; and (3) deterrence
of future misconduct." *See Gardner v. United States*, 211 F.3d
1305, 1309 (D.C. Cir. 2000) (citing *Shea v. Donohoe Constr. Co.*,
795 F.2d 1071, 1074 (D.C. Cir. 1986)). With respect to the first
justification, although the prejudice sufficient for dismissal
must be "so severe[ ] as to make it unfair to require the other
party to proceed with the case," *Shea*, 795 F.2d at 1074, when a
party's delay in a case is unreasonably protracted, prejudice to
an opposing party can be presumed. *Id* at 1075. When the delay is
not unreasonably protracted, "'the need to show actual prejudice
is proportionally greater.'" *Id.* (quoting *Lyell Theatre Corp. v.
Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982)). With respect to
the second justification, "a malfeasant party places a severe
burden on the judicial system if 'the court [is required] to
expend considerable judicial resources in the future in addition
to those it has already wasted, thereby inconveniencing many
other innocent litigants in the presentation of *their* cases."

6

*Gardner*, 211 F.3d at 1309 (quoting *id.* at 1075-76). And with respect to the third justification, deterrence justifies dismissal "when there is some indication that the client or attorney consciously fails to comply with a court order cognizant of the drastic ramifications." *Id.* (citing *Shea*, 795 F.2d at 1078).

Regardless of which rationale for dismissal under Rule 41(b) is contemplated, because disposition of cases on the merits is preferred, dismissal as a sanction should "be applied only after less dire alternatives have been explored without success." *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186-87 (D.C. Cir. 1985). This exploration of alternatives to dismissal requires a court to either "try less dire alternatives before resorting to dismissal," *Peterson v. Archstone Cmtys. LLC*, 637 F.3d 416, 419 (D.C. Cir. 2011) (internal quotation marks omitted), or conclude that alternative sanctions are futile because they "would not serve the interest of justice." *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990); *see also id.* (citing *Bristol Petroleum*, 901 F.2d at 167); *Shea*, 795 F.2d at 1075. In short, the court must "explain why the harsh sanction of dismissal [is] necessary under the circumstances of th[e] case." *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1016 (D.C. Cir. 2004).

## B.  Prosecution Laches

The Supreme Court has recognized the doctrine of prosecution laches. *In re Bogese*, 303 F.3d 1362, 1367 (Fed. Cir. 2002) (citing *General Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175 (1938); *Crown Cork & Seal v. Ferdinand Gutmann Co.*, 304 U.S. 159 (1938); *Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463 (1924); *Woodbridge v. United States*, 263 U.S. 50 (1923)). This doctrine is an equitable defense, and it "may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., LP*, 422 F.3d 1378, 1384-85 (Fed. Cir. 2005). To determine whether a delay is unreasonable and unexplained, courts conduct "an examination of the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims." *Id.* at 1386. Moreover, prosecution laches' requirement of an unreasonable and unexplained delay in turn requires a finding of prejudice that is attributable to the delay, and in order to establish prejudice there must be evidence of intervening rights. *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 729 (Fed. Cir. 2010).

## III. Analysis

Because the Court's resolution of the PTO's motion to dismiss is impacted by whether the Court grants Mr. Hyatt's motion for leave to file a notice of additional authority and a supplemental memorandum in opposition to the PTO's motion to dismiss, the Court turns to that motion for leave to file first. Concluding that the Court can properly notice the additional authority and the substance of the argument put forth in Mr. Hyatt's supplemental memorandum——namely, that the Court should consider terminal disclaimer as an alternative sanction to dismissal for Mr. Hyatt's dilatoriness——the Court then turns to the PTO's motion to dismiss. Because the Court concludes that, for the reasons explained below, dismissal is warranted, the Court has no need to address Mr. Hyatt's motion to remand and, accordingly, denies that motion as moot.

**A.   Because a Court Contemplating Dismissal for Failure to Prosecute Should Carefully Scrutinize Alternative Sanctions, Mr. Hyatt's Motion for Leave to File a Notice of Additional Authority and a Supplemental Memorandum Discussing an Alternative Sanction Is Granted**

Mr. Hyatt has filed a motion for leave to file a notice of additional authority and a supplemental memorandum in opposition to the PTO's motion to dismiss in order to bring to this Court's attention the decision granting the motion to dismiss for failure to prosecute pursuant to Rule 41(b) in Civil Action No.

03-901 that Mr. Hyatt labels "incorrect" and to address one of the questions on which that decision turned, namely "whether alternative sanctions short of dismissal are available in a case like this one." Pl.'s Mot. for Leave to File, ECF No. 129 at 1-2. The PTO has no objection to this Court taking notice of the decision in Civil Action No. 03-901, but it objects to this Court considering Mr. Hyatt's "new untimely argument" concerning alternative sanctions "that he should have made long ago in his opposition to the PTO's motion to dismiss." Def.'s Opp. to Pl.'s Mot. for Leave to File, ECF No. 131 at 3. The PTO argues that the Court should not consider the alternative sanctions argument put forth in Mr. Hyatt's supplemental memorandum because it is an argument made for the first time after the close of briefing, and there is an absence of an "'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" that could excuse the consideration of an argument not raised in the normal sequence of briefing. *Id.* at 5-6 (quoting *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013)).

Mr. Hyatt responds in turn that the reason that he did not propose terminal disclaimer as an alternative to dismissal in his opposition briefs in this case and in Civil Action No. 03-901 is that the PTO's "primary argument" in both cases is "that a litigation delay *combined with* supposed delay before the

patent office" provides the basis for dismissal. Pl.'s Reply in Supp. of Mot. for Leave to File, ECF No. 132 at 2, 4. Because the PTO's "primary argument" concerning cumulative delay alleged a period of delay longer than the 17-year patent term that would apply if any patents were to issue, Mr. Hyatt was apparently of the view that it would have been futile to propose terminal disclaimer as an alternative to dismissal in his opposition briefs. *See id.* When the court in Civil Action No. 03-901 relied on Mr. Hyatt's failure to take any action in that case for a period of approximately three years and did not appear to rely on his delay before the PTO in agency proceedings to conclude that dismissal for failure to prosecute was warranted, that court, according to Mr. Hyatt, articulated a proposition "for the first time": "that there exists no alternative sanction to dismissal in a case where a plaintiff allegedly delays in reviving litigation pending in federal court." *Id.* at 4. Accordingly, Mr. Hyatt claims that he must be given leave after the normal sequence of briefing to propose the alternative sanction of terminal disclaimer.

Although the Court will ultimately grant Mr. Hyatt's motion for leave to file for reasons explained below, the particular arguments he has chosen to proffer in support of that motion are all not persuasive. First, the assertion that the PTO's "primary argument" in this case and in Civil Action No. 03-901 is that

11

"cumulative delay" (*i.e.*, delay before the PTO in agency proceedings plus delay before the courts) is the delay that warrants dismissal for failure to prosecute mischaracterizes the PTO's arguments. In both this case and Civil Action No. 03-901, the PTO clearly presents Mr. Hyatt's litigation delay——delay of approximately eight years in this case and approximately three years in Civil Action No. 03-901——as a primary argument and presents the cumulative delay as an alternative to that argument. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 13-15 (arguing that "Mr. Hyatt's unexplained and unexcused eight-year delay, *by itself* . . . provides more than an adequate basis for this Court to dismiss this case with prejudice") (emphasis added), 16-17 (arguing that "[a]lthough Mr. Hyatt's eight years of inactivity before this Court warrants dismissal with prejudice on its own, his delay in prosecuting his applications before the [PTO] *further supports* dismissal with prejudice") (emphasis added); Civil Action No. 03-901, Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 90 at 12-15 (arguing that "Mr. Hyatt's unexplained and unexcused three-year delay, *by itself* . . . provides more than an adequate basis for this Court to dismiss this case with prejudice") (emphasis added), 15-18 (arguing that "[a]lthough Mr. Hyatt's three years of inactivity in this case warrants dismissal with prejudice on its own, [his] delay before the [PTO] provides *further support*

12

for dismissing this case with prejudice") (emphasis added). Thus
the PTO's motions to dismiss squarely present an argument——
indeed, what would fairly be called a *primary* argument——to both
this Court and the court in Civil Action No. 03-901 that Mr.
Hyatt's litigation delay, standing alone, is a sufficient basis
for a dismissal for failure to prosecute. Given that the PTO's
litigation delay argument is so clearly presented, Mr. Hyatt had
an appropriate opportunity to respond to that argument by
proposing the alternative sanction of terminal disclaimer in his
opposition briefs.

    Second, Mr. Hyatt accurately notes that the PTO's assertion
in its motion to dismiss that there are no appropriate
alternative sanctions in this case is made in the context of
discussing "cumulative delay." *See* Def.'s Mem. in Supp. of Mot.
to Dismiss, ECF No. 110-1 at 17 n.15. But, in his opposition
brief, Mr. Hyatt responds to that suggestion by asserting that
alternatives to dismissal "plainly" exist in this action,
"including setting a schedule for further proceedings." Pl.'s
Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 12 n.9. If the
choice the PTO presented to the Court were one between dismissal
based on delay that exceeds a patent term's duration of 17 years
and denying dismissal——which is how Mr. Hyatt characterizes the
choice the PTO presented in its motion to dismiss——then it is a
mystery how there could "plainly" be alternatives to dismissal.

13

That is, if Mr. Hyatt really "did not propose the alternative of a conditional terminal disclaimer as an alternative sanction" in his opposition brief because the PTO had argued in its opening brief "that the period of delay in prosecution before the PTO exceeds the length of the patent term," *see* Pl.'s Reply in Supp. of Mot. for Leave to File, ECF No. 132 at 4, then Mr. Hyatt would not have asserted in his opposition brief that alternatives to dismissal "plainly" exist in this action.

Third, Mr. Hyatt's assertion that the decision in Civil Action No. 03-901 "articulates, for the first time, the proposition that there exists no alternative sanction to dismissal in a case where a plaintiff allegedly delays in reviving litigation pending in federal court" and thereby warrants a supplemental memorandum to propose the alternative sanction of terminal disclaimer, *see id.*, is inaccurate. The court in Civil Action No. 03-901 did not say that there was no alternative sanction to dismissal; instead, it indicated that it was "unaware of any less severe alternative sanctions that would be appropriate in this situation." Civil Action No. 03-901 at 10. In any event, the D.C. Circuit has explained that "[a] Rule 41(b) dismissal is proper if, in view of the entire procedural history of the case, the litigant has not manifested reasonable diligence in pursuing the cause." *Bomate v. Ford Motor Co.*, 761 F.2d 713, 714 (D.C. Cir. 1985); *see also Smith-Bey v. Cripe*, 852

14

F.2d 592, 594 (D.C. Cir. 1988) ("A lengthy period of inactivity may also be enough to justify dismissal under Rule 41(b)."). Thus, the court in Civil Action No. 03-901 was not breaking new ground in concluding that it was not aware of an appropriate alternative to dismissal for failure to prosecute for a period of three years. Furthermore, the decision of that court——just like any decision of this Court——does not pronounce binding law for other courts. Thus, even if the decision in Civil Action No. 03-901 did announce a new proposition of law——which it does not——because that law would not be binding on this Court, recourse to a supplemental memorandum to address it would be unwarranted.

Even though Mr. Hyatt's arguments in support of his motion for leave to file are unpersuasive——and, in some instances, misleading——the Court still grants that motion based on its independent assessment of the law of this Circuit. Dismissal under Rule 41(b) for failure to prosecute is only appropriate "after less dire alternatives have been explored without success." *Trakas*, 759 F.2d at 187. That exploration of alternatives requires a district court to either "try less dire alternatives before resorting to dismissal," *Peterson*, 637 F.3d at 419 (internal quotation marks omitted), or conclude that alternative sanctions are futile because they "would not serve the interest of justice." *Bristol Petroleum*, 901 F.2d at 167.

15

The Court has found no case suggesting that possible
alternatives should be limited to those timely proposed by a
party, and the existing authority suggests that district courts
can be quite creative in fashioning alternative sanctions to
dismissal. *See Peterson*, 637 F.3d at 419 (noting "other
intermediate alternatives" that a district court had "at its
disposal" in lieu of dismissal for failure to prosecute).
Accordingly, because district courts should carefully scrutinize
alternatives to dismissal in the Rule 41(b) context and thus
should consider alternative sanctions even when they are
belatedly proposed, the Court **GRANTS** Mr. Hyatt's motion for
leave to file and deems it appropriate to consider terminal
disclaimer as a potential alternative to dismissal for failure
to prosecute.

**B.  Because Mr. Hyatt's Tactical Delay Was Particularly
    Egregious, Dismissal for Failure to Prosecute is
    Warranted**

The Court in Civil Action No. 03-901 emphasized at the
outset of its discussion that "[t]hree years is a long time."
Civil Action No. 03-901 at 4. The more than eight years that
elapsed without any activity in this case is even longer. The
more than seventeen years of delay that have accumulated due to
that litigation inactivity and Mr. Hyatt's conduct before the
PTO regarding the applications at issue here is longer still.
Because Mr. Hyatt——both before this Court and before the PTO——

16

"has not manifested reasonable diligence in pursuing the cause,"
a Rule 41(b) dismissal is warranted. *See Bomate*, 761 F.2d at
714.

In this Circuit, prejudice to an opposing party is an
appropriate rationale for a Rule 41(b) dismissal. *See Gardner*,
211 F.3d at 1309. When a delay is unreasonable, prejudice can be
presumed. *Shea*, 795 F.2d at 1075. Here, Mr. Hyatt failed to take
any action in this case for more than eight years. That delay,
standing alone, is so "unreasonably protracted," *see id.*, that
prejudice can be presumed. *See Williams v. D.C. Water Auth.*, No.
01-2110, 2005 WL 1241129, at *3 (D.D.C. May 24, 2005) ("Although
there may not be a magic number reflecting the period of time
that a defendant should be made to wait, the three and one-half
year period that has passed . . . is certainly long enough.").
Further, on top of the eight-year delay before this Court, the
applications at issue in this case—filed in May and June 1995—
are all continuations of an application filed in December 1988.
Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 8.
Once filed, the applications were frequently amended until at
least the middle of 1998. *Id.* at 16. The combined delay before
this Court and before the PTO—summing to at least 17 years—
only strengthens the propriety of presuming prejudice in this
case. *See Ames v. Standard Oil Co. (Ind.)*, 108 F.R.D. 299, 302
(D.D.C. 1985) (explaining that the determination of whether a

party has engaged in a course of protracted neglect includes "any failure to prosecute in an 'alternative forum' such as an agency or arbitration proceeding").

Mr. Hyatt's various arguments to explain away his extreme dilatoriness before this Court and before the PTO are unavailing. First, he argues that he took no action between the Federal Circuit's remand of this Section 145 case in 2007 and April 2012 because during that time the evidentiary standard governing Section 145 cases had been called into question by a decision in another of Mr. Hyatt's cases in this District. That evidentiary standard was not settled until the Supreme Court's April 2012 decision in *Kappos v. Hyatt*, 132 S. Ct. 1690 (2012). *See* Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 11–12. But Mr. Hyatt's argument here is belied by the fact that for nearly four years *after* that Supreme Court decision he still failed to take any action in this case. Mr. Hyatt tries to explain that post-April 2012 failure to act by pointing to the parties' supposed "efforts to coordinate the timing" of Mr. Hyatt's many Section 145 cases. *See id.* at 14. But the PTO resolutely insists that there "simply was no agreement between the parties" to delay this case, Def.'s Reply to Opp. to Mot. to Dismiss, ECF No. 127 at 12, and the Court was certainly not privy to any such agreement. If anything, the absence of an explicit agreement to delay prosecution in this case, when

18

viewed in light of the explicit agreements that existed in other cases, indicates that no such agreement existed in this case. Further, the cases that actually were subject to an agreed-upon "staggered schedule" between Mr. Hyatt and the PTO involve summary judgment motions that have been fully briefed since June 2014. Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 7. That Mr. Hyatt did not turn to this case after June 2014 confirms that this case was not impliedly part of any staggered schedule and, more fundamentally, confirms that Mr. Hyatt had no actual intent to turn his attention to this case any time soon.

Second, Mr. Hyatt argues that because he did not violate any order of this Court or otherwise violate any rules, his extreme delay cannot be said to have amounted to a failure to prosecute. *See id.* at 12. But the disjunctive plain language of Rule 41(b) makes clear that dismissal for failure to prosecute does not require a violation of an order or a rule. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute *or* to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it.") (emphasis added).

Third, Mr. Hyatt suggests that his delay is due to the fact that he "is the sole inventor of all of the inventions described in his applications" and so "he is the only person capable of assessing and responding to the PTO's arguments for rejecting

his claims, as well as the PTO's many requests for additional information." Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 12-13. But that Mr. Hyatt is so overburdened by his interactions with the PTO stems from the fact that he has filed many patent applications with thousands of claims and has instituted a large number of Section 145 actions. That Mr. Hyatt has so many applications with so many claims and so many Section 145 actions pending all at the same time does not excuse him from diligently pursuing *this* Section 145 action.

Fourth, putting to the side the eight-year delay before this Court which, standing alone, is sufficient to support a dismissal for failure to prosecute, *see Bomate*, 761 F.2d at 714, Mr. Hyatt argues that he did not delay before the PTO and, in any event, there is no legal basis to consider delay in that forum in the context of a Rule 41(b) motion to dismiss. Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 14-15. Mr. Hyatt's argument that there is no legal basis for this Court to consider any delay before the PTO in the context of a Rule 41(b) motion to dismiss is inaccurate. *See Ames*, 108 F.R.D. at 302 (explaining that delay relevant in the Rule 41(b) context includes "any failure to prosecute in an 'alternative forum' such as an agency or arbitration proceeding"); *cf. Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969 (D.C. Cir. 1976) ("[W]hether there has been a 'failure to prosecute' is to be

20

determined upon a consideration of all pertinent circumstances .
. . .”). In addition, his argument that he did not delay before
the PTO is unfounded. He argues that his filing of continuation
applications in 1995, nearly seven years after the parent
application was filed, was not “particularly unusual” and
complied with the relevant statute permitting continuation
applications. Pl.’s Opp. to Def.’s Mot. to Dismiss, ECF No. 112
at 15 (citing 35 U.S.C. § 120). Yet even if Mr. Hyatt’s conduct
before the PTO complied with all relevant rules and statutes,
his filing of continuation applications seven years after the
filing of a parent application followed by frequent amendments
to the claims in the continuation applications over the
subsequent three years evinces a concerted intent to delay
prosecution of his applications, particularly when this conduct
is viewed in light of the approximately eight-year prosecution
delay that eventually occurred before this Court. The pattern
that emerges from Mr. Hyatt’s conduct——delay and obfuscation in
front of the PTO and extreme delay before this Court——smacks of
the sort of “‘tactical delay’” that courts should be alert to
sanction. *See Gardner*, 211 F.3d at 1309 (quoting *Trakas*, 759
F.2d at 188).

In sum, Mr. Hyatt cannot convincingly explain away his
delay before this Court and before the PTO. The only explanation
that reasonably emerges is that Mr. Hyatt has sought to delay

prosecution in order to obtain the latest possible start date for the 17-year patent term that commences at the time of issuance for a patent issuing from a pre-GATT application. Because that delay is so egregious and has no good, non-tactical explanation, it is appropriately characterized as unreasonable and thus prejudice supporting a Rule 41(b) dismissal can be presumed. *See Shea*, 795 F.2d at 1075.

In any event, even if it were necessary to find actual prejudice, *see id.* (explaining that actual prejudice is required "where the delay is not . . . unreasonably protracted"), that actual prejudice exists in this case. First, in an attempt to devise a coherent means of handling Mr. Hyatt's hundreds of applications, in August 2013 the PTO began issuing a series of formal "Requirements" that require, for each of the 12 "families" into which his applications have been sorted, Mr. Hyatt to "1) select a number of claims from that family for prosecution, not to exceed 600 absent a showing that more claims are necessary; 2) identify the earliest applicable priority date and supporting disclosure for each selected claim; and 3) present a copy of the selected claims to the PTO." *Hyatt v. U.S. PTO*, 797 F.3d 1374, 1377 (Fed. Cir. 2015). If this case proceeds and the five applications at issue—with their more than a thousand claims—are ultimately remanded back to the PTO after Mr. Hyatt's delay in this case allowed the applications to evade

22

the Requirements process, such a turn of events runs the risk of seriously frustrating that Requirements process. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 14. Mr. Hyatt responds that "each application is required to be . . . examined on its own merits," Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 13, but that rejoinder does not adequately explain how a remand of the five applications at issue here would not frustrate the Requirements process that is already underway. Mr. Hyatt also argues that "[i]n any event, the possibility of later administrative challenges is irrelevant to the question of prejudice in litigation before this Court," *id.*, but that argument overlooks the interconnectedness of what happens at the agency level before the PTO and what happens in this Court. That is, later administrative challenges arising from Mr. Hyatt's delay in this case prejudice the PTO by forcing it to take certain positions that it might otherwise not take in the absence of those later administrative challenges. For example, part of the PTO's explanation as to why it opposes remand back to the PTO in this case is that remand would complicate the ongoing Requirements process. *See* Def.'s Opp. to Mot. to Remand, ECF No. 122 at 13. Because Mr. Hyatt's delay has forced the PTO's litigation hand in this case, that delay has prejudiced the PTO's "ability to present [its] case." *See Shea*, 795 F.2d at 1075.

Second, the PTO has explained that the eight years this case has sat in this Court would complicate assessment of the applications if they were eventually remanded to the PTO. The delay would make it more difficult to "find prior art," "understand what one having ordinary skill in the art would have known in 1995 (when Mr. Hyatt's applications were filed) and as early as 1970 (Mr. Hyatt's earliest claimed priority date)," and "know what the skilled artisan would have been motivated to do during that period." Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 13-14. The PTO has also explained that the delay would make it more difficult to find subject matter experts for the relevant time period. *Id.* at 14. Mr. Hyatt responds that the PTO already has examiners working on very similar applications implicating subject matter from the same time period as the applications at issue in this case, so its claimed examination difficulties are exaggerated. Pl.'s Opp. to Def.'s Mot. to Dismiss, ECF No. 112 at 16. But even if the PTO's potential examination difficulties are not as draconian as it makes them out to be, foisting upon its examiners an additional set of applications which they did not expect to examine works some prejudice on the PTO. In sum, even if it were necessary for the Court to find actual prejudice in this case to dismiss under Rule 41(b), that actual prejudice exists here.

The Court is mindful that "dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success." *Trakas*, 759 F.2d at 187. That exploration requires a court to either "try less dire alternatives before resorting to dismissal," *Peterson*, 637 F.3d at 419 (internal quotation marks omitted), or conclude that alternative sanctions are futile because they "would not serve the interest of justice." *Bristol Petroleum*, 901 F.2d at 167; *see id.* (citing *Bristol Petroleum*, 901 F.2d at 167). As explained above, the Court's obligation to consider alternative sanctions compels the Court to consider Mr. Hyatt's belatedly proposed alternative sanction of conditional terminal disclaimer. *See supra* Part III.A. This sanction would require Mr. Hyatt "to disclaim the portion of the patent term that corresponds to any unreasonable delay" as a condition of proceeding with this case. Pl.'s Suppl. Mem., ECF No. 129-1 at 2.

Terminal disclaimer is not an appropriate alternative sanction to dismissal in this case. Terminal disclaimer is not a workable sanction because Mr. Hyatt's period of unreasonable delay exceeds the 17-year term that would apply if any patents were to issue from the applications at issue here. Mr. Hyatt's unreasonable delay period includes not only the eight years during which he took no action in this case, but also includes

25

the nearly seven years between the filing of the continuation
applications and their parent application and the approximately
three years during which he continually amended the claims in
his applications. *See Ames*, 108 F.R.D. at 302 (explaining that
delay relevant in the Rule 41(b) context includes "any failure
to prosecute in an 'alternative forum' such as an agency or
arbitration proceeding"). While there has been no showing that
Mr. Hyatt violated any rules before the PTO and the three years
during which Mr. Hyatt amended his claims at least involved some
action on his part, Mr. Hyatt's activity before the PTO must be
understood as a part of his broader goal of "'tactical delay,'"
*see Gardner*, 211 F.3d at 1309 (quoting *Trakas*, 759 F.2d at 188),
particularly when that activity is viewed in light of the eight
years that Mr. Hyatt simply let his applications languish before
this Court. *See Cherry*, 548 F.2d at 969 ("'Failure to prosecute'
is to be determined upon a consideration of all pertinent
circumstances . . . .").

Moreover, even if it were inappropriate to consider Mr.
Hyatt's delay during PTO proceedings in the Rule 41(b) context
and, accordingly, his period of unreasonable delay were limited
to the eight years during which he took no action in this case,
terminal disclaimer still would not be an appropriate sanction.
The Supreme Court has explained in the closely analogous
prosecution laches context that "[a]ny practice by the inventor

and applicant for a patent through which he deliberately and without excuse postpones beyond the date of the actual invention, the beginning term of his monopoly, and thus puts off the free public enjoyment of the useful invention, is an evasion of the statute and defeats its benevolent aim." *Woodbridge*, 263 U.S. at 56. Here, where Mr. Hyatt filed the applications at issue just before the critical June 8, 1995 date⸺thereby permitting any patents that eventually issue from the applications to have their terms measured from the date of issuance rather than from the date of filing, *see Hyatt I*, 393 F. Supp. 2d at 5 (citing Final Rule, *Changes to Implement 20-Year Patent Term and Provisional Applications*, 60 Fed. Reg. 20195 (Apr. 25, 1995); 35 U.S.C. § 154(a)(2))⸺and thereafter proceeded to sit on his hands in this case for eight years until the PTO moved to dismiss for failure to prosecute, Mr. Hyatt was attempting to use this Court "as a tool to 'evade' the 'benevolent aim' of the patent system." *See* Civil Action No. 03-901 at 9. Given the "particularly egregious" tactical delay in which Mr. Hyatt engaged to frustrate that benevolent aim of our scheme of patent law⸺to say nothing of the fact that this Court was used as a "tool" in that strategy of tactical delay, *see id.*⸺any sanction short of dismissal, including terminal disclaimer, "would not serve the interest of justice." *See Bristol Petroleum*, 901 F.2d at 167. Accordingly, the PTO's

motion to dismiss is **GRANTED**. Because dismissal is warranted under Rule 41(b), the Court need not reach the PTO's alternative argument that dismissal is warranted under the doctrine of prosecution laches. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 110-1 at 18-33.

## IV. Conclusion

For the foregoing reasons, Mr. Hyatt's motion for leave to file is **GRANTED**, and the PTO's motion to dismiss is **GRANTED**. Because dismissal is warranted, Mr. Hyatt's motion to remand the applications at issue in this case to the PTO is **DENIED AS MOOT**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan
          United States District Judge
          February 3, 2017**